## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**MACKENZIE L. JONES,**

      **Plaintiff,**

      **v.**

**CITY OF ELWOOD, KANSAS, et al.**

      **Defendants.**

**Case No. 2:20-CV-02337-JAR-GEB**

## MEMORANDUM AND ORDER

Plaintiff Mackenzie L. Jones brings this action against Defendants Aaron Newberry, in his individual capacity, and the City of Elwood, Kansas ("the City"), in its official capacity, alleging claims pursuant to 42 U.S.C. § 1983 for violation of her constitutional rights and for negligent infliction of emotional distress under Kansas law.  Plaintiff's claims arise from events that occurred on July 20, 2018, when she was arrested and allegedly sexually assaulted by Newberry, then an officer with the Elwood Police Department.  This matter is now before the Court on the City's Motion to Dismiss (Doc. 7).

Under D. Kan. Rule 6.1(d), Plaintiff's response to the City's motion was due on September 14, 2020, but Plaintiff has not filed a response as of the date of this Order.  Under D. Kan. Rule 7.4(b), the Court may grant the City's motion on the basis of Plaintiff's failure to respond alone.  That rule provides:

> Absent a showing of excusable neglect, a party or attorney who fails to file a responsive brief or memorandum within the time specified in D. Kan. Rule 6.1(d) waives the right to later file such brief or memorandum.  If a responsive brief or memorandum is not filed within the D. Kan. Rule 6.1(d) time requirements, the court will consider and decide the motion as an uncontested motion. Ordinarily, the court will grant the motion without further notice.

Out of an abundance of caution, the Court also considers the substance of the motion below and grants the City's motion as both uncontested and on the merits.

## I.      Legal Standards

The City seeks dismissal of all of Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss brought under Rule 12(b)(6), the claim must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level" and must include "enough facts to state a claim for relief that is plausible on its face."[1]  In order to pass muster under Rule 12(b)(6), "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[2]  The plausibility standard does not require a showing of probability that a defendant has acted unlawfully, but requires more than "a sheer possibility."[3]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[4]  Finally, the Court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[5]

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but] we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"[6]  Thus,

---

[1] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[2] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

[3] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[5] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

[6] *Id.* (quoting *Twombly*, 550 U.S. at 555).

the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[7]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

The City also moves to dismiss Plaintiff's negligent infliction of emotional distress claim against it pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, based on Plaintiff's failure to satisfy the notice requirement of K.S.A. § 12-105b(d) for claims subject to the Kansas Tort Claims Act ("KTCA").  Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack.  As relevant here, "a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true."[10]

## II.    Factual Background

The Court derives the following facts from Plaintiff's Complaint and construes them in the light most favorable to Plaintiff.  On the evening of July 20, 2018, Plaintiff, then twenty years old, was attending a party with friends at a residence in Elwood, Kansas.  As Plaintiff and others were gathered in the yard, Newberry—who was on duty, dressed in uniform, and armed—approached the group and ordered everyone to spread out and sit in the grass.  Newberry asked if

---

[7] *Id.* at 679.

[8] *Id.*

[9] *Id.* at 678.

[10] *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995) (citation omitted) (citing *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990)).

anyone had marijuana, then threatened to call for a K-9 unit when no one responded.  Plaintiff

volunteered that she had a small amount of marijuana in her backpack.  Newberry asked Plaintiff

to give him the marijuana and her identification, and she complied.  Newberry then placed

Plaintiff in handcuffs and, after conferring with a second officer who had arrived at the scene,

informed Plaintiff that he was taking her to the Doniphan County Sheriff's Office in Troy,

Kansas to be booked.

After removing some items from his front passenger seat and securing Plaintiff's

handcuffs more tightly, Newberry placed Plaintiff in the front passenger seat of his car.

Newberry fastened Plaintiff's seat belt, causing Plaintiff to be completely immobilized by the

shoulder harness, lap belt, and handcuffs.  Plaintiff was frightened by Newberry's size and

demeanor and began to cry.  As he drove from the scene, Newberry asked Plaintiff why she was

crying.  When she responded that she was afraid, he told her not to cry because "not all cops are

bad."[11]  After he had driven for a short distance, Newberry told Plaintiff that she was a "beautiful

girl."[12]  Plaintiff told Newberry that she had plans to join the military and did not want anything

on her record, to which he responded that charges often get dropped and implied that he might be

able to help her.

As Newberry continued to drive to the Sheriff's Office, he looked at Plaintiff's breasts

and asked her: "So, are those real or are they fake?"[13]  When Plaintiff did not respond, Newberry

reached his right hand down her shirt and began groping her breasts.  Feeling humiliated and

violated—but defenseless due to the handcuffs and seat restraint—Plaintiff pleaded with

Newberry to stop.  Newberry continued to fondle Plaintiff's breasts, and Plaintiff told him a

---

[11] Doc. 1 ¶ 26.

[12] *Id.* ¶ 28.

[13] *Id.* ¶ 31.

second time to "please stop doing that!"[14]  Newberry finally removed his hand from Plaintiff's shirt and said, "I just wanted to know if they're real or fake."[15]  Newberry was then silent until he and Plaintiff arrived at the Sheriff's Office.

When they arrived at the Doniphan County Sherriff's Office, Plaintiff immediately informed a deputy on duty about the assault in Newberry's patrol vehicle.  On July 21, 2018, Newberry was arrested and charged with aggravated sexual battery and mistreatment of a confined person.  Newberry was terminated from his employment with the Elwood Police Department.  On March 14, 2019, he pled guilty to aggravated sexual battery and is now on the registry of convicted sex offenders.

## III.    Discussion

The City argues that both of Plaintiff's claims against it—Count II for violation of her constitutional rights under 42 U.S.C. § 1983 and Count III for negligent infliction of emotional distress—must be dismissed for failure to state a claim under Rule 12(b)(6).[16]  The City also argues that Count III must be dismissed for lack of subject matter jurisdiction.  The Court will address each claim in turn.

### A.    Claim Under 42 U.S.C. § 1983 for Failure to Screen, Train, and Supervise Newberry

Plaintiff states in Count II of her Complaint that she had the right to be free from unreasonable searches and seizures under the Fourth Amendment; the right to equal protection of the law under the Fourteenth Amendment; the right to be free from aggravated sexual battery while in the custody of a police officer; the right to expect that Newberry had been properly

---

[14] *Id.* ¶ 35.

[15] *Id.* ¶ 36.

[16] Plaintiff asserts Count I against Newberry only pursuant to § 1983, Count II against the City only, and Count III against both the City and Newberry.

screened, vetted, and trained; and the right to expect that Newberry was being properly supervised.  Plaintiff alleges that the City had a practice, policy, or custom of failing to adequately screen applicants for positions with its police department, which resulted in the hiring of Newberry.  Plaintiff also alleges that the City had a practice, policy, or custom of failing to train and supervise police officers, and that it failed to train Newberry in the proper procedure for transporting arrestees and to supervise him, resulting in harm to Plaintiff.

The City argues that Plaintiff has failed to adequately allege that it had a policy or custom that directly caused the deprivation of her rights under the Constitution.  The Court agrees. Though a municipality may be liable for acts of its employees under § 1983, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents" under a theory of *respondeat superior*.[17]   Instead, to hold a municipality liable under § 1983 for acts of its employees, a plaintiff must establish that the municipality has a policy or custom that directly caused the deprivation of rights.[18]  A municipal policy or custom may be found in:

> (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.[19]

---

[17] *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978).

[18] *Monell*, 436 U.S. at 694; *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385 (1989); *Brown v. Sedgwick Cty. Sheriff's Office*, 513 F. App'x 706, 708 (10th Cir. 2013).

[19] *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019) (quoting *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010)).

"After establishing a municipal policy or custom, a plaintiff must demonstrate 'a direct causal link between the policy or custom and the injury alleged.'"[20]  "The causation element is applied with especial rigor when the municipal policy or practice is itself not unconstitutional, for example, when the municipal liability claim is based upon inadequate training, supervision, and deficiencies in hiring."[21]  For such claims, the plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences."[22]

"The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm."[23]  When there is no pattern of unconstitutional conduct, deliberate indifference may be found only where the "violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction."[24]

In connection with Plaintiff's allegation that the City failed to properly screen Newberry for employment as a police officer, Plaintiff does not point to a formal policy, a pattern of conduct, or any specific facts about Newberry that the City missed or disregarded, beyond the allegation that it "failed to adequately screen applicants for jobs with its police department, resulting in the hiring of an individual such as Newberry who was morally and emotionally

---

[20] *Id.* at 1284 (quoting *Bryson*, 672 F.3d at 788).

[21] *Id*. (quoting *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013)).

[22] *Id*. (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 407 (1997)).

[23] *Id.* (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998)); *see also Brown*, 520 U.S. at 407.

[24] *Waller*, 932 F.3d at 1284 (quoting *Barney*, 143 F.3d at 1307−08).

unqualified to perform law enforcement activities."[25]   This conclusory allegation is insufficient to state a claim based on deficiency in hiring under § 1983.

The failure to conduct an adequate background check, standing alone, is not sufficient to meet the deliberate indifference standard.[26]  "The fact that inadequate scrutiny of an applicant's background would make a violation of rights more *likely* cannot alone give rise to an inference that a policymaker's failure to scrutinize the record of a particular applicant produced a specific constitutional violation."[27]  Rather,

> [o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected rights can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."[28]

Because Plaintiff has not alleged any facts to suggest that the individual(s) who vetted and retained Newberry should have concluded that the harm alleged in this matter would be a plainly obvious result of his hiring, Count II is insufficient to state a claim upon which relief can be granted to the extent that it is based on the City's failure to adequately screen Newberry for employment with the Elwood Police Department.

Similarly, Plaintiff has not alleged facts sufficient to state a claim for inadequate training. The United States Supreme Court has cautioned that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[29]  In that context, the deliberate indifference standard ordinarily requires a pattern of prior, similar

---

[25] Doc. 1 ¶ 54.

[26] *Waller*, 932 F.3d at 1285 (citing *Brown*, 520 U.S. at 410−11).

[27] *Id*. (quoting *Brown*, 520 U.S. at 410−11).

[28] *Id*. (quoting *Brown*, 520 U.S. at 410).

[29] *Id*. (alteration in original) (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).

constitutional violations by untrained employees because "[w]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have chosen a training program that will cause violations of constitutional rights."[30]  A pattern of prior violations is only unnecessary in the rare case in which the consequences of the municipality's failure to train are "highly predictable" and "patently obvious."[31]

Moreover, in other cases involving sexual assault by municipal officers, courts have observed the following principle:

> "In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women. Moreover, even if the training was in some manner deficient, the identified deficiency in a city's training program must be closely related to the ultimate injury such that the deficiency in training actually caused the police officer's offending conduct."  Here, the proper course of conduct—refraining from sexual assault and rape—is patent and obvious; structured training programs are not required to instill it.  Consequently, the absence of such programs (even if such absence was proven) is not so likely to cause improper conduct so as to justify a finding of liability.[32]

Plaintiff here has not alleged specific deficiencies in the training of Elwood Police Department officers with a direct causal link to the deprivation of her rights, nor has she alleged a pattern of prior violations by untrained employees that would have alerted decisionmakers to the high likelihood of the harm she alleges.  To the extent that Plaintiff's § 1983 claim against the City is based on failure-to-train, it must be dismissed.

---

[30] *Id.* (quoting *Connick*, 563 U.S. at 62).

[31] *Id.* (quoting *Connick*, 563 U.S. at 63−64).

[32] *Williams v. Bd. of Cty. Comm'rs of Unified Gov't of Wyandotte Cty./Kan. City*, No. 98-2485-JTM, 2000 WL 1375267, at *6 (D. Kan. Aug. 30, 2000) (internal citations omitted) (quoting *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996)); *see also Barney v. Pulsipher*, 143 F.3d 1299, 1307−08 (10th Cir. 1998) (finding, at summary judgment stage, that plaintiff lacked evidence to support failure-to-train claim where there was no prior pattern of jailers sexually assaulting women inmates to support that county acted with deliberate indifference).

Finally, as to Plaintiff's allegations regarding the City's failure to supervise Newberry, "[t]he Tenth Circuit treats allegations of failure to supervise in the same manner as failure to train claims."[33]  A claim under § 1983 for failure to supervise requires the plaintiff to show that the municipality's conduct "'evidences a deliberate indifference to the rights of its inhabitants' such that this shortcoming is 'thought of as a city policy or custom.'"[34]  "[A]n isolated instance of police misconduct without more is not sufficient to raise as a fact issue whether the alleged constitutional violation was caused by the City's failure to . . . supervise, or by any other official act or omission."[35]  Plaintiff here alleges only that "upon information and belief," the City "failed to supervise Newberry, who had only been recently hired and lacked any experience in law enforcement."[36]  Without more, or without allegations regarding a pattern of past incidents of a similar nature that would indicate deliberate indifference by the City, Plaintiff's failure-to-supervise allegations are insufficient to state a claim.

**B.      State-Law Tort Claim for Negligent Infliction of Emotional Distress**

The City moves to dismiss Plaintiff's state-law tort claim against it for negligent infliction of emotional distress, set forth in Count III, on two grounds.  The City first makes a facial attack on the Court's subject matter jurisdiction to hear this claim due to Plaintiff's failure to allege satisfaction of the notice requirement of K.S.A. § 12-105b(d).  The City also argues that Count III fails to state a claim under Rule 12(b)(6).

---

[33] *Bell v. City of Topeka, Kan.*, 496 F. Supp. 2d 1182, 1194 (D. Kan. 2007) (citing *Whitewater v. Goss*, 192 F. App'x 794, 797 (10th Cir. 2006)).

[34] *Id.* (quoting *Whitewater*, 192 F. App'x at 797) (citing *Specht v. Jensen*, 863 F.2d 700, 702 (10th Cir. 1998)).

[35] *Id.* at 1195 (second alteration in original) (quoting *Cowdrey v. City of Eastborough*, 730 F.2d 1376, 1379 (10th Cir. 1984)).

[36] Doc. 1 ¶ 55.

K.S.A. § 12-105b(d) requires a person having a claim under the KTCA to file written notice with the clerk of the governing body of the municipality before filing suit.[37]  Compliance with this provision "is required before a court has subject matter jurisdiction over a tort claim against a municipality."[38]  "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking."[39]  The "burden of establishing" a federal court's subject-matter jurisdiction "rests upon the party asserting jurisdiction."[40]  "Mere conclusory allegations of jurisdiction are not enough."[41]

Plaintiff here has not pled compliance with § 12-105b(d), nor has she responded to the City's motion to dismiss asserting that it did receive notice pursuant to the statute.  Thus, the Court must dismiss Count III without prejudice for lack of subject matter jurisdiction as to the City, and does not reach the City's argument that Count III also fails to state a claim upon which relief can be granted under Rule 12(b)(6).[42]

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant City of Elwood's Motion to Dismiss (Doc. 7) is **granted**.  As to the City of Elwood, Count II of Plaintiff's Complaint is **dismissed with prejudice** and Count III is **dismissed without prejudice**.

**IT IS SO ORDERED.**

---

[37] K.S.A. § 12-105b(d).

[38] *Whaley v. Sharp*, 343 P.3d 63, 67 (Kan. 2014) (citations omitted).

[39] *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015) (citing *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013)).

[40] *Id.* (citation omitted).

[41] *United States ex rel. Hafter, D.O. v. Spectrum Emergency Care, Inc.*, 190 F.3d 1156, 1160 (10th Cir. 1999) (citing *Penteco Corp. Ltd. P'ship v. Union Gas Sys. Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991)).

[42] *See Humes v. Cummings*, No. 18-2123-DDC-GEB, 2018 WL 4600717, at *4 (D. Kan. Sept. 25, 2018) (explaining that dismissal for failure to comply with K.S.A. § 12-105b(d) must be without prejudice).

Dated: October 8, 2020

S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE